**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

Cause No:_____04-12173RWZ_____

| | |
|---|---|
| Jon P Morisey, | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| Staci H Raggi, | ) |
| Respondent, | ) |
| | ) |

## Motion to Stay Ontario County Proceedings

Comes now the Petitioner, JON P MORISEY, presenting a "Motion to Stay Ontario County Proceedings".

1.      The civil cause 04-12173RWZ was filed because of civil rights violations perpetrated during an Ontario County Court proceeding in the State of New York.

2.      A "Complaint: Notice of Petition and Verified Petition for Warrant of Removal" was filed in the Federal District Court on the 15th of October, 2004. Copies of these documents were served to all defendants on the dates on the 26th of October, 2004 in the case of Defendants Reed, Burkett and Raggi; and on the 27th of October, 2004 in the case of Defendant Gosper. This document was included in the original complaint package and time-stamped by the Federal Clerk.

3.      A notice was filed at the Ontario County Court on the 26th of October, 2004 proclaiming the Federal Court's intention to hear the case. This notice was mailed

1

along with the summons, Federal time-stamped copy, and all exhibits. A copy of the "Notice of Removal to United States District Court" is included in this motion, was delivered yet ignored by the New York State Court in Ontario County.

4.    On the 27th of October, 2004 the Ontario County Court held a hearing in spite of the removal to Federal Court based on the Civil rights violations. A default judgment was recommended by the Court's judicial hearing officer in spite of the case being heard in Federal Court. Notification of these findings was signed by the New York State judicial hearing officer on the 19th of November, 2004; well after the "Notice of Removal to United States District Court" and "Complaint: Notice of Petition and Verified Petition for Warrant of Removal" were served and in fact after three defendants were able to file their respective "Motion to Dismiss". This document from Ontario County Court is attached and titled, "Referee's Report with Findings and Conclusions". During that hearing, the judicial referee recommended, a loss of joint custody and reduced visitation; which would create further damages. The document even goes so far as to attribute this quotation, "The respondent's position is that Rianne should forego her activities in favor of visitation", *in spite of the fact that the same document does not list myself among those listed as present.* There are numerous misrepresentations listed in the findings that I would enjoy a chance to refute and address. This is in addition to the fact that my daughter has not attended scheduled visitation since the 20th of August, 2004 because there is no recourse available for this bias and Judge Frederick Reed has exhibit a predilection to disregard three months of visitation violations. There is no order in effect changing this schedule that would allow this to occur without penalty.

2

5. The Ontario County Court of New York State has jurisdiction over a visitation and support matters per the New York State divorce decree.

6. Judge Frederick Reed's bias prevents a proper adjudication of these infractions, leading to further damages and loss of contact. Judge Frederick Reed or another Ontario County Judge need simply sign an order revoking visitation, increasing support in order to exact revenge for the pursuit of the Federal Case by the Plaintiff.

7. Irreparable damage is imminent given the disregard of the "Notice of Removal to United States District Court".

8. The Defendant, Staci Raggi has filed for New York State support violations in an effort to escalate these proceedings and to extract revenge. The violations will be heard in the same biased jurisdiction that is the subject of this cause.

9. The inability to adjudicate these visitation violations in an unbiased venue or to prevent them from continuing is increasing the damages to the Plaintiff daily.

10. The Defendant Staci Raggi's disregard for existing New York State Court orders which are still in effect is counter-productive to the resolution of these proceedings. To the extent that the string of violations does not end by timely action by the State of New York, the case will be expanded to include New York State as a co-defendant along with a commensurate increase in the damages requested.

11. The Federal District Court has issued no order remanding the case to New York State within the required 30 day period.

12. The New York State proceedings should have already been stayed. The stay of the state proceedings is an **automatic** judicial event, and *immediate* by strict operation of federal law; 28 USC § 1446(d) is provided here in its entirety:

3

Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, **which *shall* effect the removal and the State court *shall proceed no further* unless and until the case is remanded**. (emphasis added)

Put another way, the United States Supreme Court clarified and established, clear back in 1966: "The petition is now filed in the first instance in the federal court. After notice is given to all adverse parties and a copy of the petition is filed with the state court, **removal is effected and state court proceedings cease unless the case is remanded**. 28 U. S. C. § 1446 (1964 ed.). See generally, American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, Tentative Draft No. 4, p. 153 et seq. (April 25, 1966)." Georgia v. Rachel, 384 U.S. 780, 809 n27, 86 S. Ct. 1783, 16 L. Ed. 2d 925 (1966). (emphasis added)

## Summary and Prayer

Comes now the Plaintiff, JON P MORISEY, asking for relief based on the summary and prayer provided below.

1.  WHEREFORE the Defendant Judge Frederick Reed has the ability to continue in a biased manner a motion to stay all Ontario County proceedings related to the Morisey v. Raggi divorce should be granted.

2.  WHEREFORE the Defendant Judge Frederick Reed still presides over biased proceedings in New York State and given the continued pattern of bias, a change of jurisdiction to the Albany Family Court system is requested, failing the granting of a motion to stay.

3.    WHEREFORE the removal of the State cause has not been honored, affirmation from the Federal District Court should be provided to all parties ordering a cessation of all Ontario County proceedings.

Respectfully submitted,

JON MORISEY, PRO SE

## VERIFICATION

I hereby declare, verify, certify and state, pursuant to the penalties of perjury under the laws of the United States, and by the provisions of 28 USC § 1746, that all of the above and foregoing representations are true and correct to the best of my knowledge, information, and belief.

Executed at Quincy, Massachusetts, this _22nd___ day of December, 2004.

JON P MORISEY, PRO SE

## CERTIFICATE OF SERVICE

I hereby certify that, on this __22nd__ day of December, 2004, a true and complete copy of

the foregoing memorandum, by depositing the same in the United States mail, postage prepaid,

has been duly served upon all parties of record in the lower state proceedings, to-wit:

(Defendant):
STACI RAGGI
6221 BUCKSKIN DRIVE
FARMINGTON, NY 14425

(Attorney for Staci H Raggi and co-defendant):
ALEXANDRA BURKETT
66 N MAIN ST
CANANDAIGUA, NY 14424

(Guardian Ad Litem):
ROBERT GOSPER
1904 ROUTE 96, SUITE #2
PHELPS, NY 14532

(Attorney for Ontario County Family Court Judge Frederick Reed)
JEFFREY P. MANS, ASSISTANT ATTORNEY GENERAL, STATE OF NEW YORK
DIVISION OF STATE COUNSEL, LITIGATION BUREAU
THE CAPITOL
ALBANY, NEW YORK  12224
(518) 474-3602
JEFFREY.MANS@OAG.STATE.NY.US
BAR NO. 649264

JON P MORISEY, PRO SE

JON P MORISEY
175 J CENTRE ST, APT 1001
QUINCY, MA 02169
781-308-9295
JMORISEY8@YAHOO.COM

ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

Cause No:_____

Jon P Morisey,                                    )    In a petition for removal from the
                                                  )    Family Court of Ontario, New York
             Petitioner,                          )
                                                  )    04   12173  RWZ
v.                                                )
                                                  )
Staci H Raggi,                                    )    State court cause no.: **V-00934-03/03A**
                                                  )                           **V-00935-03/03A**
             Respondent,                          )
                                                  )
and, in re: the support and welfare               )
of Patrick Morisey and Rianne Morisey.            )    Honorable Frederick Reed, Judge

## Complaint
## Notice of Petition and Verified Petition For Warrant Of Removal

Comes now the Petitioner, JON P MORISEY, and in direct support of this request for removal

of the above-encaptioned state court cause into, and through, the various jurisdiction of this

United States District Court provided under at least 28 USC § 1331, 28 USC § 1367, 28 USC

1441(b), 28 USC § 1441(c), 28 USC § 1441(e), 28 USC § 1443(1), 28 USC § 1443(2), and/or 28

USC § 1446, and on the federal questions involved, herein alleges, states, and provides the

following:

PARTIES

The plaintiff, Jon P Morisey is a resident of Quincy (02169), Plymouth county, Massachusetts

and a citizen of the United States residing at 175 J Centre St, Apt 1001.

The defendant, Staci Raggi is a resident of Farmington (14425), Ontario county, New York

and a citizen of the United States residing at 6221 Buckskin Drive.

1

The defendant, Judge Frederick Reed is a judge of Canandaigua (14424), Ontario county, New York and a citizen of the United States with an office at 27 N Main St.

The defendant, Robert Gosper is an attorney of Phelps (14532), Ontario county, New York and a citizen of the United States with an office at 1904 Route 96, Suite 2.

The defendant, Alexandra Burkett is an attorney of Canandaigua (14424), Ontario county, New York and a citizen of the United States with an office at 66 N Main St.

JURISDICTION

1. This District Court of the United States has original, concurrent, and supplementary jurisdiction over this cause of action, pursuant to the authorities cited above, including, but not limited to the following, to-wit: 28 USC § 1331, 28 USC § 1367, 28 USC 1441(b), 28 USC § 1441(c), 28 USC § 1441(e), 28 USC § 1443(1), 28 USC § 1443(2), and/or 28 USC § 1446.

2. The District Court of the United States is an Article III court with authority to hear questions arising under the Constitution, Laws, and Treaties of the United States, including but not limited to the Bill of Rights, the Ninth Amendment, the Eleventh Amendment, the original Thirteenth Amendment, the Fourteenth Amendment, the International Covenant on Civil and Political Rights, and the Universal Declaration of Human Rights, with Reservations. *See* the Article VI Supremacy Clause of the Constitution of the United States of America, as lawfully amended (*hereinafter* "U.S. Constitution").

RESERVATION OF RIGHTS DUE TO FRAUD

3. Petitioner hereby explicitly reserves his fundamental Right to amend this and all subsequent pleadings, should future events and/or discoveries prove that he has failed adequately to comprehend the full extent of the damages which he has suffered at the hands of the

Respondent, the state court, and other involved parties, both named and unnamed, now and at all times in the future. *See* Rules 8, 15, and 18 of the Federal Rules of Civil Procedure.

### RECORD OF STATE PROCEEDINGS

4.  Petitioner is now proceeding on the basis of the presumption that the New York State court record will be made available to this Honorable Court upon Notice and Demand for Mandatory Judicial Notice, pursuant to Rules 201 and 902 of the Federal Rules of Evidence, the Full Faith and Credit Clause contained under Article IV of the U.S. Constitution, and 28 U.S.C. § 1449.

### INCORPORATION OF PRIOR PLEADINGS

5.  Petitioner hereby incorporates by reference all pleadings, papers, and effects heretofore filed or otherwise lodged within the state proceedings the same as if fully set forth herein. (H.I).

### ALLEGATIONS

6.  Petitioner specifically complains on matters which go to related federal questions, such as federal criminal jurisdiction within the several States of the Union, and the denial or the inability to enforce, in the courts of a State, one or more rights under any law providing for the equal rights of citizens of the United States, or of all persons within the jurisdiction thereof, to-wit:

7.  Petitioner complains of various systematic and premeditated deprivations of fundamental Rights guaranteed by the U.S. Constitution, by the Constitution of the State of New York, as lawfully amended (*hereinafter* "New York Constitution"), and by federal law, and which deprivations are criminal violations of 18 U.S.C. §§ 241 and 242. *See also* 28 U.S.C. § 1652.

8.  The details of these violations are detailed below. to-wit:

    a) New York State law was violated by Judge Reed with off-record comments threatening the Plaintiff, Jon P Morisey, with loss of joint custody if his petition for a visitation violation

3

was not dropped, which constituted witness tampering in the fourth degree under New York State Penal Code Article 215, section 10. Judge Reed's immunity from civil suit by virtue of his position as a judge is null and void due to the criminal activities in which he participated that are inconsistent with the standards of his office leaving him liable for his criminally negligent behavior.

b) As a result of the off-record threat by Judge Reed, the Plaintiff's court appointed lawyer filled a motion to withdraw from the case. Judge Reed granted this motion despite the objections of the Plaintiff. No replacement lawyer was subsequently appointed. The threat by Judge Reed clearly led to the violation of the right to an attorney as defined in *Miranda v. Arizona* 384 U.S. 436 (1966).

c) Judge Reed failed to take any action in response to opposing council, Alexandra Burkett, intentionally mailing time sensitive documents to the wrong address in violation of New York State courtroom procedure. The documents were mailed one day after the receipt of the pro se representation form, which listed the correct address. The fact that the Plaintiff had not lived at that address in more than fifteen months, and had never resided there during the period of Ms. Burkett's participation in the case, as well as the short duration between receiving the correct address all point to a willful violation of procedure.

d) Judge Reed failed to take any action in response to the law guardian and Respondent's attorney being seen in the same vehicle in the court-house parking lot following the July 2, 2004 session acting in a manner that suggested more than a strictly professional relationship. Neither party denied being in the vehicle at the following session. The law guardian stated on the record that he "helps colleagues out from time to time".

4

e) Judge Reed and law guardian Robert Gosper supported a motion by the Respondent's attorney to require a drug test based solely on the ridiculous pretext that the Plaintiff had "Sold an Oven". This constitutes an illegal search under the Fourth Amendment as no reasonable probable cause existed.

f) Judge Reed has failed to provide the parties with the results of the drug test, which tend to exonerate the Plaintiff of these ridiculous charges in spite of the fact that the results were provided on July 6, 2004, by the ACM laboratory. Presently, the results remain unknown despite three months of elapsed time since their delivery, and several motions by the Plaintiff to produce the evidence. The withholding of evidence and the inability to confront the witnesses providing these results constitute a violation of the Sixth Amendment.

g) Judge Reed has denied subpoenas for numerous witnesses capable of proving the Respondent's perjury, making a false statement to a police officer, child endangerment, and visitation violation; providing another example of a violation of the Plaintiff's Sixth Amendment rights.

h) Judge Reed failed to act on the Plaintiff's visitation violation petitions in a timely manner as defined by New York state court procedure leading to a violation of the Sixth Amendment right to a speedy trail.

i) Judge Reed violated the Eighth Amendment right prohibiting "cruel and unusual" punishment when he denied an appeal for a reduction in child support during a three-month period of the Plaintiff's unemployment during which New York State diverted all unemployment benefits to service the child support obligation. Forcing a person to forgo all income whatsoever for a three month period while New York state social services requires a

one month waiting period in order to receive benefits constitutes an outrageous violation of constitutional rights. The Plaintiff suffered the loss of two properties due to foreclosure as a result as well as strains in the relationship with his children due to diminished financial capacity.

j) The denial of contact between the Plaintiff and the minor children represents another violation of the Eighth Amendment prohibiting "cruel and unusual" punishment.

k) The United States Constitution provides that NO State may "deprive any person of life, liberty or poverty without due process of law". In almost all states, presumptive child support awards rise as a share of obligor (paying parent) income. NO child cost studies show child costs rising as a share of after-tax income. ALL child cost studies show child costs declining as a share of the after-tax income. In most cases, especially in higher income situations, the presumptive child support results in a significantly higher obligation than one bases on actual child costs that decline as a share of net income. In Parrett v. Parrett (1988, the Court of Appeals of Wisconsin), the court found that, particularly in higher income situations, the presumptive child support amount would "result in a figure so far beyond the child's needs as to be irrational". This is the very sort of result the Due Process clauses are designed to prevent.

l) The presumptive child care award typically results in the custodial parent receiving huge financial windfall (profit) well in excess of childcare costs. For typical income situations, the custodial parent ends up with a higher standard of living than the non-custodial parent. This is the case even when the non-custodial parent earns significantly more than the custodial parent. This represents an extraordinary benefit for the custodial parent and an extraordinary burden for the obligator. This violates equal protection. In

addition, when combined with the tax benefits discussed above, the outcome is that the custodial parent does not contribute to the child costs at the same rate the non-custodial parent and, often, not at all.

m) The court points out that custodial parents typically receive $200 to $350 per month in extra after-tax income just for having custody. These child-related tax benefits include Head of Household status, Child exemptions, child credits, childcare credits, and Earned Income credits. Wisconsin either does not include these credits in child support calculations or they are grossly understated. The court found that not sharing these child-related tax benefits violates equal protection.

n) The source of the right to privacy has been held to originate in varying constitutional provisions. However, it has been long recognized to apply to "family" concerns whether the family exists within the confines of marriage or not. (Eisenstadt v. Baird (1973)). The court found that "by requiring the non-custodial parent to pay an amount in excess of those required to meet the child (rens') basic needs...(the child support amount) impermissibly interfere(s) with parental decisions regarding financial expenditures on children. "The governments' interest in family expenditures on children is limited to insuring that the child (rens) basic needs are met. Not extravagances, not luxuries, but needs. Once that occurs, government intrusion must cease (Moylan v. Moylan). In addition, the court found that the presumptive child support is so excessive that it forces non-custodial parents to frequently work extra jobs for basic needs. This creates an extraordinary burden for the obligor and, potentially, an additional burden on taxpayers. It is also distracting the non-custodial parent from parenting fully without justification. This

violates equal protection. This is contrary both to public policy and common sense. Any government mandate beyond basic child costs interferes with the right to privacy.

o) The excessive support burden placed on the Plaintiff constitutes indentured servitude prohibited in the Thirteenth Amendment abolishing slavery.

p) The awarding of custody to female parents in over ninety percent of all cases heard constitutes a clear pattern of gender discrimination protected by civil rights.

q) Robert Gosper, law guardian, knowingly failed to investigate wrongdoing and abuse on behalf of his minor clients despite his fiduciary responsibility to do so as part of a criminal conspiracy acting in collusion with Judge Reed, and the Respondent's attorney Alexandra Burkett. As such, these three parties have committed the crime of conspiracy and caused damages to the Plaintiff.

Federal question as regarding awards of child support and commissions of fraud therein:

The egregiously different burdens and benefits placed on persons similarly situated but for the award of custody, i.e., parents with the obligation to support their children and the same means for doing so as when they were married, has been explained at length in several judicial opinions. The finding is that such disparate treatment violates the guarantees of equal protection. *Jones v. Helms*, 452 U.S. 412, 101 S.Ct. 2434 (1981), *South Central Bell Telephone Co. v. Alabama*, 526 U.S. 160, 119 S.Ct. 1180 (1999), and *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620 (1996). Child support guidelines do not result in awards based on the constitutionally sound principles of equal duty and proportional obligation (proportional to available financial resources such as each parent's income). See *Smith v. Smith*, 626 P 2d 342, 345-348 (Oregon, 1980); *Meltzer v. Witsberger*, 480 A.2d 991 (Pa. 1984); and *Conway v. Dana*, 318 A.2d 324 (Pa. 1985).

Further, the instant state proceedings have consistently demonstrated themselves to be willfully, intentionally, and knowingly in violation of both state and federal law, by: ordering awards of child support in favor of Respondent, and of garnishment against Petitioner, that circumvented various statutory due process consideration factors as to needs, assets, debts, and resources of each parent, as well as violating due process procedures in the timeliness and payment logistics thereof; moreover, the actual amounts awarded, even *if* they had not been otherwise unlawful pursuant to the above, were consistently mandated and carried out in express violation of statutory maximum limits proscribed by both state and federal law, even though this Petitioner duly informed the instant state court of said limits *multiple* times, within various pleadings, and also on the record in open court. *See* Ind. Code § 24-4.5-5-104, and Ind. Code § 24-4.5-5-105, as well as 15 USC § 1673, and 15 USC § 1675.

Additionally, multiple commissions of fraudulent reporting of income and expenses have been committed in knowing, intentional, and willful concert by Respondent and her counsel, Conger; When these incidents have been presented to the instant state court, they were also ignored; The result is judicial-attorney conspiracy to commit child support fraud and further unlawful deprivations of property without due process, all in violation of the Constitution.

## Federal question as regarding equal rights to care, custody, and control of minor children:

a) A parent's right to raise a child is a constitutionally protected liberty interest. This is well-established constitutional law. The U.S. Supreme Court long ago noted that a parent's right to "the companionship, care, custody, and management of his or her children" is an interest "far more precious" than any property right. *May v. Anderson*, 345 U.S. 528, 533, 97 L. Ed. 1221, 73 S.Ct. 840, 843 (1952). In *Lassiter v. Department of Social Services*, 452 U.S. 18, 27, 68 L. Ed. 2d 640, 120 S.Ct. 2153, 2159-60 (1981), the Court stressed that the parent-

9

child relationship "is an important interest that 'undeniably warrants deference and absent a powerful countervailing interest protection.'" quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 31 L. Ed 2d 551, 92 S.Ct. 1208 (1972).

b) A state's granting of sole custody is sufficiently intrusive to warrant scrutiny, i.e., granting sole custody to one parent impinges on the rights of the other parent to a significant extent. This is obvious to the most casual observer. A parent whose time with a child has been limited to the typical four-days-per-month visitation clearly has had his or her rights to raise that child severely restricted. In *Troxel v. Granville*, 527 U.S. 1069 (1999), Justice O'Conner, speaking for the Court stated, "The Fourteenth Amendment provides that no State shall 'deprive any person of life, liberty, or property, without due process of the law.' We have long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, 'guarantees more than fair process.' The Clause includes a substantive component that 'provides heightened protection against governmental interference with certain fundamental rights and liberty interest" and "the liberty interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interest recognized by this Court." Logically, these forms of fundamental violations are inherently a federal question.

c) The compelling state interest in the best interest of the child can be achieved by less restrictive means than sole custody. A quarter-century of research has demonstrated that joint physical custody is as good or better than sole custody in assuring the best interest of the child. As the Supreme Court found in *Reno v. Flores*, 507 U.S. 292, 301 (1993): "'The best interest of the child,' a venerable phrase familiar from divorce proceedings, is a proper and feasible criterion for making the decision as to which of two parents will be accorded custody. But it is not traditionally the sole criterion -- much less the sole constitutional criterion -- for

other, less narrowly channeled judgments involving children, where their interest conflicts in varying degrees with the interest of others. Even if it were shown, for example, that a particular couple desirous of adopting a child would best provide for the child's welfare, the child would nonetheless not be removed from the custody of its parents so long as they were providing for the child adequately." Narrow tailoring is required when fundamental rights are involved. Thus, the state must show adverse impact upon the child before restricting a parent from the family dynamic or physical custody. It is apparent that the parent-child relationship of a married parent is protected by the equal protection and due process clauses of the Constitution. In 1978, the Supreme Court clearly indicated that only the relationships of those parents who from the time of conception of the child, never establish custody and who fail to support or visit their children are unprotected by the equal protection and due process clauses of the Constitution. _Quilloin v. Walcott_, 434 U.S. 246, 255 (1978). Clearly, divorced parents enjoy the same rights and obligations to their children as if still married. The state through its family law courts, can impair a parent-child relationship through issuance of a limited visitation order, however, it must make a determination that it has a compelling interest in doing so. Trial courts must, as a matter of constitutional law, fashion orders which will maximize the time children spend with each parent unless the court determines that there are compelling justifications for not maximizing time with each parent. Throughout this century, the Supreme Court also has held that the fundamental right to privacy protects citizens against unwarranted governmental intrusion into such intimate family matters as procreation, child-rearing, marriage, and contraceptive choice. _Planned Parenthood of Southeastern Pennsylvania v. Casey_, 505 U.S. 833, 926-927 (1992).

11

d) Contrary to the state court's consistent disregard for the equal right of this male Petitioner to care, custody, control, and management of his natural minor children, and its corresponding continuum of sole custody in favor of the female Respondent, the federal Due Process and Equal Protection rights extend to both parents equally. In *Caban v. Mohammed*, 441 U.S. 380, (1979) the Supreme Court found that a biological father who had for two years, but no longer, lived with his children and their mother was denied equal protection of the law under a New York statute which permitted the mother, but not the father, to veto an adoption. In *Lehr v. Robinson*, 463 U.S. 248 (1983), the Supreme Court held that "[w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child,' *Caban*, [citations omitted], his interest in personal contact with his child acquires substantial protection under the Due Process Clause." (Id. at 261-262). To further underscore the need for courts to consider the constitutional protections which attach in family law matters, one need only look to recent civil rights decisions. In *Smith v. City of Fontana*, 818 f. 2d 1411 (9th Cir. 1987), the court of appeals held that in a civil rights action under 42 U.S.C. section 1983 where police had killed a detainee, the children had a cognizable liberty interest under the due process clause. The analysis of the court included a finding that "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child." Id. at 1418, citing *Kelson v. City of Springfield*, 767 F. 2d 651 (9th Cir. 1985). In *Smith* the court stated "We now hold that this constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents." Id. In essence, the Supreme Court has held that a fit parent may not be denied equal legal and physical custody of a minor child without a finding by clear and convincing evidence of

12

parental unfitness and substantial harm to the child, when it ruled in <u>Santosky v. Kramer</u>, 455
U.S. 745, 753 (1982), that "[t]he fundamental liberty interest of natural parents in the care,
custody, and management of their child is protected by the Fourteenth Amendment."

9.  In the instant state proceedings, Petitioner has been continually deprived of the full right
to equal care, custody, control, and management of the minor children, and the same approaching
four years going, without any requisite showing of past or potential harm – of *any* kind – upon
the minor children, while, instead and contrarily, Respondent has been consistently documented
in acts of minor to medium abuse towards the children, long-ranging neglect of several important
matters regarding the children, numerous criminal acts of a dishonest nature, child
endangerment, alienation, mis-medication – even *in the presence of* the children – and, a general
haphazard disdain for the minor children's welfare, needs, and emotional stability... yet, the state
court essentially coddles her behavior *against* the best interests of the children, and *even* has
gone to certain extraordinary lengths to shelter and assist some of these egregious manifestations.

10. This petition for removal is strictly *not* about a typical domestic relations action versus
what would be the expected reluctance of a federal court to exercise jurisdiction over the same;
this cause inures to the very *essence* of the enactment and purpose of 28 USC §§ 1441 and 1443:
to provide for a federal remedy when a person "is denied or cannot enforce in the courts of such
State a right under any law providing for the equal rights of citizens of the United States, or of all
persons within the jurisdiction thereof"

### NOTICE OF RELATED CASES

11. There is a sufficient pattern of judicial abuse to substantiate that Judge Reed's jurisdiction
over the instant state action was most likely *void ab initio*, and even if not, that any attempt at
continuing exercise over the state proceedings *is* void.

12. Petitioner has a federal question right, under the guarantees of 42 USC § 2000a, to full and equal lawful treatment in a state court of law, and according to the various protections under not only the New York Constitution, but more importantly under those of the U.S. Constitution.

13. Petitioner has a federal question right, under the protections of the Civil Rights Act of 1964, 42 USC § 2000d, et seq., and as interpreted by the U.S. Supreme Court to *include* prohibitions against discrimination based on sex or gender, to now remove the instant state proceedings, under 28 USC §§ 1441 and 1443, in order to be free from the denial of such equal civil rights and treatment established by the above allegations. *See also* 42 USC § 2000d-7.

14. Petitioner has a federal question right, under the protections of 42 USC §§ 3617 and 3631, which include prohibitions against discrimination based on sex or gender, to remove the instant state proceedings, under 28 USC §§ 1441 and 1443, in order to be free from the denial of such equal civil rights and treatment established by the above allegations. *See also* 42 USC § 2000d-7.

15. Petitioner has a further federal question right, under the protections of 42 USC § 5891, which include prohibitions against discrimination based on sex or gender regarding other matters and allegations expressed *supra*, to remove the instant state proceedings, under 28 USC §§ 1441 and 1443, in order to be free from the denial of such equal civil rights and treatment established by the above allegations. *See also* 42 USC §§ 5106a, 5106c, 10406, 10420, 10701, and etc.

16. Petitioner has a further federal question right not to be discriminated as articulated according to the above allegations, under the expressed public policy of the United States of America, by and through certain Acts of Congress strictly specifying the critical value of protecting children, youth, and family bonds, and the joint responsibilities of federal courts therein. *See* 42 USC §§ 12301, 12351, 12352, 12371, 12635, and etc.

17. Petitioner has a further federal question right to ensure that his minor children are free from experiencing abuse and/or neglect, due to unlawful sex or gender discrimination in awards of child custody, and to ensure that any involved state judicial systems meet or exceed their required corresponding duties under 42 USC §§ 13001, 13003, 13021, 13031, and etc.

18. Petitioner has a further federal question right, under 42 USC §14141, to be free from unlawful violations of civil rights committed by the parties involved in the state proceedings.

19. The above numerous and various rights will, in fact, be consistently violated if these proceedings were ever to be remanded back to said state court, and manifest injury would accrue upon not only this Petitioner, but also against the obvious best interests of his minor children.

## NOTICE TO PARTIES

20. Petitioner now and hereby provides his formal Notice of the above to all interested parties, of record or otherwise, within and surrounding the above-encaptioned state court proceedings.

## SUMMARY AND PRAYER

21. Petitioner reiterates that his request for removal to this Court is not just about a supported and reasonable *expectation* of the future manifest deprivation of his various civil rights within said state court, but also that such a deliberately unlawful pattern of the same is well established.

22. Without the immediate intervention, and the exercise of full jurisdiction and authority by this Honorable Court in removing said lower state proceedings, the Petitioner will be otherwise subjected to egregious denial and inability to enforce in said state court one or more rights under the laws providing for the equal rights of citizens of the United States, and will be likewise unlawfully forced to suffer manifest and irreparable injuries therein, without reasonable remedy.

15

WHEREFORE, the undersigned Petitioner, JON P MORISEY, now prays for removal of the above-encaptioned state court proceedings into, and under, the jurisdiction of this United States District Court, with all speed, and for all other relief deemed just and proper in the premises.

WHEREFORE, the undersigned Petitioner, JON P MORISEY, now prays for damages in the sum of $2,000,000 for the suffering inflicted on the petitioner and his children through the criminal pattern of bias, conspiracy, criminal activity, and a pattern of alienation intended to strain the relationship of the petitioner and his children as well as the denial of meaningful contact with the children.

WHEREFORE, the undersigned Petitioner, JON P MORISEY, now prays to be acknowledged as the sole custodial parent of the minor children, or failing that to have this request heard in an unbiased tribunal within the Commonwealth of Massachusetts.

WHEREFORE, the undersigned Petitioner, JON P MORISEY, now prays to enjoy a permanent change in jurisdiction from New York to Massachusetts for all matters of child support and family court related to the his divorce from Staci Raggi.

WHEREFORE, the undersigned Petitioner, JON P MORISEY, now requests a trial by jury.


Respectfully submitted,


JON P MORISEY, PRO SE


VERIFICATION

I hereby declare, verify, certify and state, pursuant to the penalties of perjury under the laws of the United States, and by the provisions of 28 USC § 1746, that all of the above and foregoing representations are true and correct to the best of my knowledge, information, and belief.

Executed at Quincy, Massachusetts, this __9th___ day of October, 2004.

JON P MORISEY, PRO SE

17

## CERTIFICATE OF SERVICE

I hereby certify that, on this __9th__ day of October, 2004, a true and complete copy of the

foregoing memorandum, by depositing the same in the United States mail, postage prepaid, has

been duly served upon all parties of record in the lower state proceedings, to-wit:

(Defendant):
STACI RAGGI
6221 BUCKSKIN DRIVE
FARMINGTON, NY 14425

(Attorney for Staci H Raggi):
ALEXANDRA BURKETT
66 N MAIN ST
CANANDAIGUA, NY 14424

(Guardian Ad Litem):
ROBERT GOSPER
1904 ROUTE 96, SUITE #2
PHELPS, NY 14532

(Ontario County Family Court Judge)
JUDGE FREDERICK REED
27 N MAIN ST
CANANDAIGUA, NY 14424

JON P MORISEY, PRO SE

JON P MORISEY
175 J CENTRE ST, APT 1001
QUINCY, MA 02169
781-308-9295
JMORISEY8@YAHOO.COM

18

General Form 14
(Notice of Motion)
12/97

**FAMILY COURT OF THE STATE OF NEW YORK**
**COUNTY OF ONTARIO**................................................

In the Matter of a Proceeding under                 **Docket No. V-00934-03/03A**
The Family Court Act                                               **V-00935-03/03A**

**Jon Morisey,**                                                     **NOTICE OF MOTION**
                                    **Petitioner,**

  -against-

**Staci Raggi,**
                                    **Respondent.**

................................................................................

**To: The Honorable Judge Frederick Reed**

## Notice Of Removal To United States District Court

Comes now the Petitioner, JON P MORISEY, and notifies the parties and the Court that this cause has been removed to the jurisdiction of the United States, by stating the following:

1. There have been, and continue to be, violations against the civil and constitutional rights of this undersigned Petitioner in this cause, and which have not been duly protected.

2. Accordingly, and commensurate with certain issues within these state proceedings also giving independent rise to federal subject-matter jurisdiction, this cause has now been removed to the United States District Court for the District of Massachusetts, Boston Division.

3. As the Court and all parties can clearly confirm, the attached Notice and Warrant regarding Petition For Removal was filed in said federal court on October 15, 2004.

4. The parties and this Court are hereby given formal **notice** that the combination of filings made under both this cause now herewith, as well as within the aforementioned federal court,

1

*automatically* **divests** this Court of **any and all** further authority and jurisdiction over these proceedings – **bar none** (*see* 28 USC § 1446 (d)) – and, *therefore*, there will be **NO** more hearings, orders, or *any* other proceedings held, made, or done within this state cause until, and unless, further notice or order is first made by the judge of said United States District Court.

Respectfully submitted,

JON P MORISEY, PRO SE

## CERTIFICATE OF SERVICE

I hereby certify that, on this ___25th__ day of October 2004, a true and complete copy of the foregoing notice of removal, by depositing the same in the United States mail, postage prepaid, has been duly served upon all parties of record in these proceedings.

JON P MORISEY, PRP SE

JON P MORISEY
175 J CENTRE ST, APT 1001
QUINCY, MA 02169
781-308-9295
JMORISEY8@YAHOO.COM

2

FAMILY COURT OF THE STATE OF NEW YORK
COUNTY OF ONTARIO

STACI H. RAGGI,

                        Petitioner,

            -vs-                                    REFEREE'S REPORT WITH
                                                    FINDINGS AND CONCLUSIONS
JON P. MORISEY,

                        Respondent.                 Docket Nos.    V-00934-03/04
                                                                   V-00935-03/04

Present:     Frederic T. Henry, Jr.
             Judicial Hearing Officer

             Alexandra Burkett, Esq.
             Attorney for Petitioner

             Robert Gosper, Esq.
             Law Guardian

        The petitioner seeks an order granting her sole custody of the parties' two children, with limited visitation to the respondent and that the respondent submit to a complete psychiatric evaluation and a complete drug and alcohol evaluation.

        A hearing was scheduled on October 27, 2004 at 8:30 a.m. The respondent was served with the petition and advised of the hearing date but failed to appear.

                                    FINDINGS

        The parties have two children Rianne, born May 2, 1991 who is the petitioner's natural child and was adopted by the respondent and Patrick Morisey, born October 27, 1995 who is the parties' natural child.

        The parties were divorced by judgment signed April 6, 2001 and filed April 20, 2001. The decree provided for joint custody of the children and their primary residence with the petitioner. The respondent was granted specified visitation which included every other weekend from Friday at 5:30 p.m. until Sunday at 7:30 p.m. and Thursday from 5:30 p.m. until 8:00 p.m.

        The relationship between the parties has deteriorated substantially with a number of petitions filed by the respondent who now resides in Quincy, Massachusetts. He generally

-2-

exercises weekend visitation but because of his present location does not exercise Thursday visitation.

Rianne participates in soccer and other school activities which have conflicted with the respondent's visitation. The respondent's position is that Rianne should forego her activities in favor of visitation. Generally, Rianne wishes to participate in her activities which has created a substantial breach of the relationship between her and the respondent (see Exhibit1).

The petitioner asserts the respondent sometimes appears for visitation early and sometimes returns the children early without notice. On one occasion, May 14, 2004, Patrick had to forego a session with a tutor because of the early arrival of his father. To prevent a re-occurrence, the petitioner has changed the tutoring day.

The respondent has made substantial demands on the children's long-standing physician, including that the pediatrician appear in Court on October 27, 2004. The respondent's letters to the physician are threatening and contain statements accusing the physician of lying and making irrational medical judgments concerning the children (see Exhibits 2 and 3). The physician has indicated to the petitioner that because of the respondent's assertions, he may discontinue his treatment of the children.

## CONCLUSIONS

The extreme animosity between the parties is not conducive to a joint custody arrangement (see Dube v. Dube, 259 A.D. 2d 1041). In the present case, the children have resided with the petitioner in New York State and it would be in their best interests to grant petitioner sole custody.

Regarding specific visitation, the respondent should not pick up the children earlier than 5:30 p.m. on Friday nor return them later than 7:30 p.m. on Sunday. If for some reason the respondent intends to pick up the children later than 5:30 p.m. on Friday and/or return them later than 7:30 p.m. on Sunday he should so advise the petitioner via e-mail two days in advance of the Friday visitation.

The respondent has failed to complete a drug and alcohol evaluation as ordered by Judge Frederick Reed. Any determinations regarding this issue should rest with Judge Reed.

Parents should encourage and facilitate their children's participation and attendance in

-3-

school and other activities which are an important part of the children's lives. Conflicts have occurred with Rianne, who has refused to visit with the respondent when school and athletic events are scheduled. I conclude if the respondent does not wish to facilitate Rianne's attendance at her activities, her participation in such activities should take precedence.

The issue of child support was not sufficiently developed for me to make any recommendations. Further, a complete psychiatric evaluation of the parties would be helpful and is recommended.

Signed at Canandaigua, New York November 9, 2004.

Frederic T. Henry, Jr.
Judicial Hearing Officer

NEW YORK STATE COURTS
COUNTY OF ONTARIO
COURTHOUSE, 27 N MAIN ST
CANANDAIGUA, NY 14424-1447

Jon P Morsey
175 J Centre St. Apt. 1001
Quincy, MA 02169-8636